IN RE ESTATE OF ALICE R. SHAW, Deceased, State of Missouri, v. CHARLES R. HAMILTON, Executor and Trustee under the Will of ALICE R. SHAW, Deceased, Appellant.—No. 38588.—175 S. W. (2d) 588.

Division Two, November 1, 1943.

Rehearing Denied, December 6, 1943.

*H. A. Hamilton* and *Robert A. Hamilton* for appellant.

*Roy McKittrick*, Attorney General, and *John S. Phillips*, Assistant Attorney General, for respondent.

WESTHUES, C.—The controversy in this case concerns the proper method of computing inheritance taxes upon a portion of the estate of Alice R. Shaw, deceased. The probate court of the city of St. Louis sustained the contention of the state and the parties interested appealed to the circuit court where the action of the probate court was sustained. An appeal was taken to this court.

The facts are not in dispute. Alice R. Shaw died testate leaving property valued at about $900,000.00. The testatrix by her will created a trust estate wherein Charles R. Hamilton was made trustee and Edgar J. Rozier, a nephew of the testatrix, was the life beneficiary. The will then provided as follows:

"After the death of my said nephew, Edgar J. Rozier, the trust shall cease and determine, and the trustee shall pay over and deliver the entire trust fund in his possession, in equal shares, to my nieces, Maude Rozier Harrison and Zoe Rozier Leuer, and my nephews, Francis J. Rozier and Henry L. Rozier.

"If any of said last four mentioned persons die before the said Edgar J. Rozier, then the share of the person or persons so dying shall be distributed to the [589] heirs-at-law of such person or persons as determined by the laws of the State of Missouri, then in force."

The parties to this suit agreed that this clause created a contingent remainder in the four persons named. These four remaindermen were brothers and sisters of Edgar J. Rozier, the life beneficiary. Each of the four remaindermen had children living at the time of the trial.

The value of the remainder in the trust estate was appraised at $154,-551.56. The appraiser assessed a tax under the provisions of the fifth and sixth clauses of section 573, Mo. Rev. St. Ann. (1939) as follows: 5% on the first $20,000.00, 10% on the next $20,000.00, 15% on $40,000.00 and 20% on the balance of $74,551.56, or a total tax of $23,910.31. The state in thus taxing the fund contended that it was done in compliance with section 597, Mo. Rev. St. Ann. (1939), which reads in part as follows:

"When the property is transferred in trust or otherwise, and the rights, interest or estates of the transferees are wholly dependable upon contingencies or conditions whereby they may be wholly or in part created, defeated, extended or abridged, a tax shall be imposed upon said transfer at the highest rate which, on the happening of any of the said contingencies or conditions, would be possible under the provisions of this article, and such tax so imposed shall be due and payable forthwith by the executor, administrator, or trustee out of the property transferred:"

The state contended that there was a possibility that when the life tenant died the trustee might find only one person to whom the trust fund could be paid under the terms of the will and that therefore the fund must be taxed as a single unit or entity.

Appellant contends that the fund should be divided into four separate units or entities as though four separate estates had been created. Appellant would assess the tax as follows: The interest of Maude R. Harrison, $38,637.89, a tax of 5% on the first $20,000.00 and 10% on the balance of $18,637.89. And so with each of the other three remaindermen, resulting in a total tax of $11,455.16, or $12,455.15 less than the amount of tax assessed by the state. It will be noticed that appellant would determine the rate of tax by the same method as the state, that is, the highest rate permissible under section 573, supra, and that portion of section 597 as copied above. The only dispute then resolves itself into the question of whether the tax is to be assessed against the fund as a single entity or whether the fund shall be divided into four separate entities and then taxed.

Appellant in a reply brief insists that this case should be treated the same as if the trust property consisted of four separate and distinct tracts of land and the testatrix had created four separate and distinct trusts, giving the fruits of the four tracts to one beneficiary for life and each separate tract to a specific remainderman. What the result would be in such a case we need not decide. The fact remains that the testatrix in this case created one trust for the benefit of a life tenant and directed the trustee that after the termination of the trust he distribute the entire estate, share and share alike, to the four named remaindermen or their heirs. If we consider then the most remote contingency that may occur, that is, that there may be one lone heir of the four brothers and sisters named, then the trustee

would be bound under the terms of the will to pay the entire trust estate to this one individual. Since the statute compels us to consider the most remote contingency that may occur we must assume for the purpose of the inheritance tax law that there will be only one person as heir of the four remaindermen. That is a possibility although extremely remote. It is our conclusion therefore that since the testatrix directed that in the event of such a contingency the trustee transfer the whole trust estate to the lone surviving heir we must treat the fund as one entity. Appellant says in his brief:

"The subject matter of inheritance tax laws is the *right or privilege* of acquiring property by descent or by virtue of a testament. The *amount* of the tax is determined by the value of the property acquired by descent or devise."

Would not the sole surviving heir of the four remaindermen acquire the trust estate by virtue of the will of Alice R. Shaw? If so, why should it not be taxed as one entity? This conclusion is sustained, we think, by the cases cited in appellant's brief. In the case of In Matter of Parker, 226 N. Y. 260, l. c. 265, the court said:

"The method of computation is not different when the remainder is contingent. [590] It is argued that in providing against contingencies, we should limit ourselves to those that the testator may be supposed to have foreseen. We need not stop to inquire whether that is so. There is nothing to show that this contingency was not foreseen by the testator, and covered by his will. He might have said, in so many words, that the nephew should receive the remainder in default of issue of the life tenant. He said the same thing in effect when he provided that his nephew should be the residuary legatee. Gifts have the same value whether they are stated separately or collectively. The rate of taxation does not vary with the paragraphs of scriveners.

"This construction of the statute maintains the consistency of the law and its singleness of purpose. The state has secured itself against all contingencies, remote as well as probable. That is the dominant scheme, which it is our duty to preserve. In the case before us, the contingency is in all likelihood remote, and so the mind rebels a little against the tying up of money. But in other cases it may be less remote, and the need of protection greater. Whether in improbable contingencies, the risk justifies the burden, it is not for us to say. That is a question for the legislature. Our duty is done when we enforce the law as it is written."

In another case, The People v. Byrd, 253 Ill. 223, l. c. 229, 230, the court said:

"The court did not err in holding that there was a liability here under the Inheritance Tax act but it did err in fixing the amount of said tax. In determining the amount of inheritance tax under the Inheritance Tax law the court should take the highest amount that

in any contingency would become liable to the tax. A possible contingency here is that three of the four devisees named may die before the widow, leaving no issue. In that contingency the one survivor would receive all of the estate, for the reason such one would be the only representative of the class living at the time the estate vests. The court below did not adopt this rule, but supposed the possible contingency that two of the children named should die without issue before the widow, leaving two survivors of the class to take the estate. The court then divided the devise equally between the two supposed survivors and deducted $20,000 from each share to arrive at the amount of tax due. Under the rule requiring the court to adopt the highest amount that in any contingency can pass, the amount here was subject to only one deduction of $20,000.''

It was pointed out in appellant's brief that the New York and Illinois statutes, which were under consideration by the courts in the cases cited, are similar to ours. Those cases are therefore of value in determining the question before us. Appellant, however, calls our attention to the case of In The Matter Of Cole, 235 N. Y. 48, where two separate trusts were created and the life beneficiaries in the trust estate were brother and sister. The court in that case approved an assessment against each trust separately. We find, however, in reading the opinion in that case that no contention was made by the state that the assessment should have been made against all of the property in both trusts as a single entity. Since that point was not raised and was not considered the opinion is not persuasive on the question before us. It is our conclusion therefore that the state's contention in this case must be sustained and that the tax was properly assessed.

It will be noticed that under the provisions of section 597, supra, the state retains the money collected and in the event the trustee at the termination of the trust must divide the trust fund into four separate units the state must refund to the trustee the excess tax collected. We note too that the legislature of 1943 amended section 597, supra, so that in the future the state will collect taxes at the lowest rate under the statute and if in the course of time a contingency occurs requiring a higher rate of tax then the trustee will be required to pay the higher rate before distribution is made.

The judgment is affirmed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.